UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THEODORE GUARRIELO, JR., | * | |
| THEODORE GUARRIELLO, JR. TRUST | * | |
| U/A/DTD 6/18/2003, and | * | |
| THEODORE GUARRIELLO JR. | * | |
| TRUSTEE, | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 14-cv-13351-IT |
| | * | |
| FAMILY ENDOWMENT PARTNERS, LP, | * | |
| FAMILY ENDOWMENT PARTNERS, | * | |
| LLC, FEP FUND I, LP, and | * | |
| LEE DANA WEISS, | * | |
| | * | |
| Defendants. | * | |

ORDER

August 12, 2015

TALWANI, D.J.

Before the court are plaintiffs' Motion to Compel the Production of Documents [#32] and defendants' Motion for Protective Order and/or Order Quashing the June 11, 2015 Subpoena Issued by Plaintiffs [#34]. For the reasons set forth below, the court grants plaintiffs' motion to compel and denies defendants' motion for protective order.

I.   Background

Plaintiffs served their initial request for production of documents, pursuant to Fed. R. Civ. P. 34, on January 27, 2015. Request Prod. Doc. [#32-3] at 37. The request sought production "no later than thirty days of service of this request." Id. at 4. At defendants' request,

plaintiffs agreed to an extension of time to respond to March 16, 2015.  Mot. Compel [#32] at 4.  On March 15, 2015, defendants served their responses to the request for production, stating that subject to broad objections, defendants would "produce non-objectionable, non-privileged, responsive information in their possession, custody and control."  Defs.' Resp. [#32-4].  Defendants subsequently stated, however, that they were unwilling to produce most of the documents without entry of a protective order.  Flynn Decl., Exh. 5 [#32-6] at 19.  The court entered the protective order on April 29, 2015.  Order [#31].   Defendants nonetheless produced no further documents.

Among the requests for documents were requests for exhibits and transcripts of certain proceedings.  Request Prod. Doc., Request 31, 33.  Defendants objected to producing such documents "to the extent the . . . documents are protected from disclosure by confidentiality agreements, stipulations, orders or other confidentiality obligations" and also "on the grounds that it request nonpublic personal information protected from discovery under the Gramm-Leach-Bliley Act."  Defs.' Resp., Resp. 31, 33.  Plaintiff subsequently provided to defendants a letter from parties to an arbitration covered by the requests, but defendants continued to refuse to provide those documents on the ground that the request was "overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissive evidence."  Flynn Decl., Exh. 5 at 12.

On June 11, 2015, plaintiff filed the motion to compel, and also served a subpoena on the third-parties seeking the arbitration transcript, exhibits and confidentiality agreement.  Defendants responded with the motion for a protective order and to quash the subpoena, and two motions for extensions of time to respond to the motion to compel.  The requests for extension of time asserted that defendants were in the process of retaining new counsel.  The court allowed

both extensions, but conditioned the second extension on defendants' substitute counsel filing a notice of appearance no later than July 31, 2015. Order [#47]. The court's order extended defendants' time to respond to the motion to compel to August 7, 2015. Id. Although defendants' counsel did file a notices of appearance on July 30, 2015, they did not begin to receive the file and documents until the week of August 3, 2015. Opp. Mot. Compel [#52] at 2. By August 7, 2015, defendants' counsel still had not received the entire file. Id. In opposition to the motion to compel, defendants' counsel made no firm commitment to produce the overdue documents, and stating instead that "[d]efendants expect to begin producing documents to Plaintiffs beginning sometime the week of August 10, 2015, and will thereafter produce documents on a rolling basis". Id. at 2.

II.     Discussion

A party responding to a request for production of documents must either state that inspection "will be permitted as requested" or state an objection. Fed. R. Civ. P. 34(b)(2)(B) (emphasis added). An objection to part of a request must specify that part and must still permit inspection of the rest. Fed. R. Civ. P. 34(b)(2)(C); see also Local Rule 34.1(c)(2) ("[n]o part of a document request shall be left unanswered merely because an objection is interposed to another part of the document request").[1] In their March 16, 2015 response to plaintiffs' request for production, defendants objected to each request, and specified that they would produce "non-objectionable, non-privileged responsive information" for nearly every request. Those documents to which defendants did not object should have been produced to plaintiffs on March 16, 2015, or at the very latest, when the protective order was entered on April 29, 2015.

---

[1] Where a claim of privilege is asserted and any document is not provided on the basis of that assertion, the attorney asserting the privilege shall also identify in the objection the nature of the privilege that is being claimed with respect to each such document. Local Rule 34.1(c)(1).

Accordingly, except as to documents covered by the objections and specific claims of privilege set forth in the response to request for production of documents, defendants are ordered to produce the responsive documents, as set forth below.

With regard to the arbitration documents, defendants assert in their opposition to the motion to compel and in their motion seeking to quash the third-party subpoena that the documents are not relevant because they involve an investment advisory relationship with the third party and at least some investments do not overlap with the investments at issue in this case. Defendants contend further that much of the information sought constitutes nonpublic personal information of the third-party defendants that is protected from discovery under the Gramm-Leach-Bliley Act. Defendants offer to produce exhibits from that arbitration to the extent that such exhibits (i) do not reflect confidential information specific to the third-party's account, and (ii) involve investments at issue in this case. Defendants also contend, however, that they do not possess the hearing transcripts from the arbitration. Opp. Mot. Compel at 11-12.

Defendants' concerns that the arbitration transcript and exhibits are protected from discovery by the Gramm-Leach-Bliley Act and that the third-party's confidentiality needs to be protected are unpersuasive. First, the Gramm-Leach-Bliley Act does not prohibit the disclosure of otherwise protected information "to respond to judicial process" or with "the consent or at the direction of the consumer." 15 U.S.C. § 6802(e)(2), (8); See Marks v. Global Mortgage Group, Inc., 218 F.R.D. 492, 495-96 (S.D.W.Va. 2003) (holding that under the "judicial process" exception, a defendant financial institution "may disclose its customers' nonpublic personal information in response to the plaintiffs' discovery request."). Here, the third-party advised defendants of their consent, and have served no objections to the subpoena. See Fed. R. Civ. P. 45(d)(2)(B) (requiring objections to be served before the earlier of the time specified for

compliance or 14 days after the subpoena is served). Finally, to the extent that the third-party arbitration concerned allegations of fraud by defendants, the documents and exhibits may be relevant to plaintiffs' claims and are therefore discoverable pursuant to Fed. R. Civ. P. 26(b)(1), even though different parties and some different investments are involved. In light of the defendants' claimed burden and the assertions that they do not have the transcripts, the court allows plaintiffs to obtain exhibits and transcripts pursuant to the third-party subpoena.

Accordingly,

(A) Plaintiffs' Motion to Compel [#32] is ALLOWED. Except as to documents covered by their objections and specific claims of privilege set forth in the response to request for production of documents, defendants are ordered to produce to plaintiffs the following documents no later than August 19, 2015:

    (1) all documents in defendants' possession, custody or control concerning[2] the events described in the Complaint;

    (2) all documents in defendants' possession, custody or control concerning any alleged defenses identified in defendants' answer;

    (3) all documents in defendants' possession, custody or control that evidences any prejudice ostensibly suffered by defendants from it took plaintiffs to file the complaint;

    (4) all documents in defendants' possession, custody or control sufficient to identify any applicable statute of limitations;

    (5) all documents in defendants' possession, custody or control that defendants are required to produce pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii);

---

[2] As used throughout this enumerated list, "concerning" means referring to, describing, evidencing or constituting, as defined by Local Rule 26.5(c)(7).

(6) all insurance agreements in defendants' possession, custody or control under which an insurance business may be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse for payments made to satisfy the judgment;

(7) all document in defendants' possession, custody or control sufficient to identify Family Endowment Partners, LLC's relationship to Family Endowment Partners, LP;

(8) all documents in defendants' possession, custody or control sufficient to identify FEP Fund I, LP's relationship with defendants Family Endowment Partners, LP, Family Endowment Partners, LLC, and/or Lee Dana Weiss;

(9) all documents in defendants' possession, custody or control sufficient to identify Defendant Lee Dana Weiss' education, employment history, professional licenses and registrations, and the periods each was in effect;

(10) all documents in defendants' possession, custody or control through which defendant Lee Dana Weiss represented that he had professional credentials, certifications or licenses that he did not have at the time of that representation during the period December 31, 2009 to the present, to the extent such documents exist;

(11) all entries in defendant Lee Dana Weiss' datebooks, calendars, journals, or diaries, to the extent they are related to plaintiffs or the allegations made by plaintiffs in this action;

(12) all registrations and other filings the defendants made since December 31, 2009 with any regulatory entity related to plaintiffs or the allegations made by plaintiffs in this action that are maintained in defendants' possession, custody or control;

(13) all documents in defendants' possession, custody or control concerning communications between plaintiffs and/or their representatives and defendants and/or their representatives concerning matters covered in the complaint;

(14) all documents in defendants' possession, custody or control sufficient to show the total number of accounts Defendant Family Endowment Partners, LP managed, and the total dollar amount of assets under its management, at the end of each year from when plaintiffs entered into their investment advisory agreement with Family Endowment Partners, LP until the time plaintiffs terminated their relationship with defendants;

(15) all documents in defendants' possession, custody or control sufficient to show the total dollar amount of assets under Defendant FEP Fund I, LP's management at the end of each year from the time plaintiffs subscribed to FEP Fund I, LP until the time plaintiffs terminated their relationship with defendants;

(16) all documents in defendants' possession, custody or control concerning the investment advisory agreement entered into between the Family Endowment Partners, LP and the plaintiffs, dated on or about November 28, 2010;

(17) all documents sufficient to identify each member of Family Endowment Partners, LP between when plaintiffs entered into their investment advisory agreement with Family Endowment Partners, LP and the time plaintiffs terminated their relationship with defendants;

(18) all documents in defendants' possession, custody or control concerning plaintiffs' subscription with FEP Fund I, LP;

(19) all documents in defendants' possession, custody or control concerning the preparation of certified financial statements and/or financial reports of FEP Fund I, LP since plaintiffs first subscribed to that fund;

(20) all documents in defendants' possession, custody or control concerning the preparation of certified financial statements and/or financial reports for FEP Fund I, LP, since plaintiffs first subscribed to that fund;

(21) all documents in defendants' possession, custody or control concerning plaintiffs' loans to Biosyntec Polska Sp Zoo;

(22) all documents in defendants' possession, custody or control concerning plaintiffs' financing agreement with Falcon Peregrine Family, LLC;

(23) all documents in defendants' possession, custody or control concerning plaintiffs' financing agreement with Karien Sp Zoo;

(24) all documents in defendants' possession, custody or control sufficient to identify the business and transactions between defendants and Biosyntec SA, Biosyntec Polska Sp Zoo, Falcon Peregrine Family, LLC, Karien SP Zoo, the Insignia Vintage Fund, LP, and Basepoint Specialty Finance, LLC;

(25) all documents in defendants' possession, custody or control sufficient to identify the business and transactions between Biosyntec SA, Biosyntec Polska Sp Zoo, Falcon Peregrine Family, LLC, Zaklady Tytoniowe w Lublinie SA, Karien SP Zoo, Global Endowment Fund I, LP, Globe360 Tobacco Co., Inc., HCP Global Investment Fund, LP, Sterling Stamos Endowment—Select Partners Fund, LP, the Insignia Vintage Fund, LP, and Basepoint Specialty Finance, LLC;

(26) all documents in defendants' possession, custody or control concerning any remuneration, compensation, kickbacks or other benefit Donald Rivers and/or Rivers and Co., P.C. received from any of the defendants or their representatives, to the extent such documents exist;

(27) all documents sufficient to show the total dollar amount of assets under IDEA Investment Fund, Ltd.'s management at the end of each year from the time plaintiffs subscribed to the IDEA Investment Fund, Ltd. until the time plaintiffs terminated their relationship with defendants;

(28) all documents in defendants' possession, custody or control concerning plaintiffs' subscription to the IDEA Investment Fund, Ltd.;

(29) all documents in defendants' possession, custody or control sufficient to identify formal complaints made against defendants since December 31, 2009 related to plaintiffs;

(30) all documents in defendants' possession, custody or control tendered or received during discovery of any settled or contested proceeding involving defendants since December 31, 2009 that alleged fraud, conversion, breach of fiduciary duty, breach of contract, and/or unfair practices, or which involved any of the investments involved in this case, to the extent such information is related to plaintiffs;

(31) all documents in defendants' possession, custody or control, with respect to exhibits used in any settled or contested proceeding involving defendants since December 31, 2009, that alleged fraud, conversion, breach of fiduciary duty, breach of contract, and/or unfair practices, or which involved any of the investments involved in this case, relating to plaintiffs;

(32) all documents in defendants' possession, custody or control, with respect to judgments and settlement agreements entered into by defendants for any matter involving them since December 31, 2009 that alleged fraud, conversion, breach of fiduciary duty, breach of contract, and/or unfair practices, or which involved any of the investments involved in this case, to the extent it is related to plaintiffs;

(33) all documents in defendants' possession, custody or control with respect to depositions, transcripts, audio or video recordings and any other device that captured the testimony or statements of the defendants or their representatives that were generated since December 31, 2009, to the extent it is related to plaintiffs;

(34) all documents in defendants' possession, custody or control with respect to depositions, transcripts, audio or video recordings and any other device that captured the testimony or statements of any witness identified in plaintiffs' and/or defendants' initial disclosures in this case, that were generated since December 31, 2009, to the extent it is related to plaintiffs;

(35) all documents in defendants' possession, custody or control concerning regulatory inquiries regarding defendants and/or investments in a) the Insignia Vintage Fund, LP; b) the FEP Fund I, LP; c) Biosyntec SA; d) Biosyntec Polska Sp Zoo; e) Basepoint Specialty Finance I, LLC; f) Falcon Peregrine Family, LLC; g) Karien Sp Zoo; h) the I-DEA Investment Fund, Ltd., to the extent it is related to plaintiffs; and (38) all documents in defendants' possession  custody or control concerning regulatory disciplinary actions—actual or proposed—and requests involving alternative dispute resolution concerning the defendants that have been made since December 31, 2009, as

well as any responses or appeals that defendants have submitted in response to such matters, to the extent it is related to plaintiffs.

(B) Defendants' Motion for Protective Order and/or Order Quashing the June 11, 2015 Subpoena Issued by Plaintiffs [#34] is DENIED.

IT IS SO ORDERED.

Date:  August 12, 2015                                    /s/ Indira Talwani
                                                          United States District Judge