UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THEODORE J. GUARRIELLO JR., | * | |
| THEODORE GUARRIELLO JR. TRUST, | * | |
| U/A/DTD 6/18/2003, and | * | |
| THEODORE GUARRIELLO JR. | * | |
| TRUSTEE, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 14-cv-13351-IT |
| | * | |
| FAMILY ENDOWMENT PARTNERS, LP, | * | |
| FAMILY ENDOWMENT PARTNERS, | * | |
| LLC, FEP FUND I, LP, and | * | |
| LEE DANA WEISS, | * | |
| | * | |
| Defendants. | * | |

ORDER

August 10, 2016

TALWANI, D.J.

Before the court is Plaintiffs' Motion for Default Judgment [#100] as to Defendants Family

Endowment Partners, LP and Family Endowment Partners, LLC and Plaintiffs' Motion for

Summary Judgment [#109] as to Defendant Lee Dana Weiss.[1] For the following reasons, the

court ALLOWS IN PART and DENIES IN PART the motion.

---

[1] Plaintiffs initially sought default judgment against Defendants Family Endowment Partners, LP, Family Endowment Partners, LLC, and FEP Fund I, LP and summary judgment against all Defendants. See Mot. Default J. [#100]; Mot. Summ. J. [#109]. On April 8, 2016, Plaintiffs withdrew their motion for summary judgment as to Defendants Family Endowment Partners, LP and Family Endowment Partners, LLC and in favor of their motion for default judgment against those defendants. Pls.' Resp. Court Order Dated Apr. 7, 2016 [#136]; see also Pls.' Mot. Default J. [#100]. Plaintiffs and Defendant FEP Fund I, LP have filed an Agreement of Judgment [#150].

I.  Factual Background

In deciding the motion for summary judgment, the court properly construes the facts in the light most favorable to Mr. Weiss, the nonmovant. See Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008). There are no disputed facts for purposes of Plaintiffs' motion for default judgment against Family Endowment Partners, LP and Family Endowment Partners, LLC.

A.  The Parties

Plaintiff Theodore Guarriello is trustee of Plaintiff Theodore Guarriello Jr. Trust U/A/Dtd 6/18/2003 ("the Guarriello Trust"). Pls.' Statement Undisputed Material Facts Supp. Mot. Summ. J. ¶ 1 [#110-1] [hereinafter "Pls.' Facts"].

Defendant Lee Dana Weiss is a founder, managing partner, and a principal officer of Defendant Family Endowment Partners, LLC ("FEP, LLC"). Id. ¶ 3. FEP, LLC has no employees or operations. Pl.'s Facts ¶ 3 [#110-1].

Mr. Weiss is also a founder of Defendant Family Endowment Partners, LP ("FEP, LP"), a limited partnership of which FEP, LLC is the sole general partner. Id. ¶ 4. At all relevant times, FEP, LP was registered with the Securities and Exchange Commission ("SEC") as an investment adviser under the Investment Advisers Act of 1940. Id. ¶ 5. At all relevant times, Mr. Weiss was the Managing Partner of FEP, LP. Lee Weiss Aff. Opp'n Pls.' Mot. Summ. J. [hereinafter "Weiss Aff."] ¶ 10 [#132]. In that capacity, Mr. Weiss was also a member of FEP, LP's leadership team which managed the firm's day-to-day operations. Pl.'s Facts ¶ 5 [#110-1]; Weiss Aff. ¶ 11 [#132].

Defendant FEP Fund I, LP ("FEP Fund I") was created in 2007. Pls.' Facts ¶ 6 [#110-1]. FEP Fund I is a limited partnership that at all relevant times principally invested in private investment partnerships. Id. FEP, LP is FEP Fund I's sole general partner and is exclusively

responsible for FEP Fund I's investment management and administration. <u>Id.</u> ¶ 46. Mr. Weiss

was the person responsible for all of FEP Fund I's investment decisions. <u>Id.</u>

On November 28, 2010, Plaintiffs and FEP, LP entered into an Investment Advisory

Agreement. Sandra Hanna Decl. Supp. Pls.' Mot. Summ. J. [hereinafter "Hanna Decl."] Ex. 4 12

[#112-4]. The agreement was between "Theodore Guarriello, Jr. Trustee; Theodore Guarriello Jr.

Trust U/A/Dtd 6/18/2013" as "Client" and FEP, LP as "Adviser." <u>Id.</u> The agreement was signed

by Mr. Gaurriello as trustee and by Mr. Weiss on behalf of FEP, LP's general partner FEP, LLC.

<u>Id.</u> at 23. The Investment Advisory Agreement further gave FEP, LP "full discretionary trading

authority" over the assets in management. Pls.' Facts ¶ 15 [#110-1]. Those assets were to be

"diversified as appropriate in view of [Plaintiffs'] risk tolerance and liquidity needs." Hanna

Decl. Ex. 4 13 [#112-4]. Mr. Guarriello's risk tolerance was "conservative to moderate." Pls.'

Facts ¶ 15 [#110-1].[2]

After executing the Investment Advisory Agreement, Mr. Guarriello opened four

accounts with Fidelity Investments ("Fidelity"), into which he deposited more than $16 million

in securities. <u>Id.</u> ¶ 14. Plaintiffs' holdings with Fidelity were originally divided into two groups.

Pls.' Facts ¶ 16. Approximately half were traditional investments (*i.e.* stocks and bonds) held in

the four Fidelity accounts. <u>Id.</u> ¶ 16. The other half of were moved out of the Fidelity accounts on

Mr. Weiss' recommendations. <u>Id.</u>; <u>see also</u> Weiss Aff ¶ 22 [#132].

*B. Mr. Weiss' Relationship with Biosyntec, S.A.*

Throughout his relationship with Mr. Guarriello, Mr. Weiss had a relationship with and

---

[2] Mr. Weiss disputes that Mr. Guarriello's risk tolerance was "conservative to moderate" because this risk tolerance is not specifically stated in the Investment Advisory Agreement. <u>See</u> Weiss Resp. Pl.'s Facts ¶ 15 [#139]. Mr. Weiss acknowledged, however, in an email to Mr. Guarriello and Mr. Guarriello's accountant dated August 10, 2012, that Mr. Guarriello's "risk profile" was "conservative to moderate." Pls.' Reply Facts ¶ 15; Guarriello Aff. Ex. 4 2 [#111-4].

an interest in Biosyntec S.A. ("Biosyntec"), a French company that focused on ways to address the harmful effects of smoking. Pls.' Facts ¶¶ 24, 25 [#110-1]. The relationship began in 1999 when Mr. Weiss was introduced to Iman Emami, who was raising funds for the new company. Id. ¶ 24. At some point after meeting Mr. Emami, Mr. Weiss acquired a "performance interest" in Biosyntec through a confidential compensation agreement with one of his clients. Id. ¶ 25; Weiss Aff. ¶ 71 [#132]. That "performance interest" entitled Mr. Weiss to either a $300,000 fee or 20 percent of the gain on the client's investment in Biosyntec, whichever was higher. Pls. Facts ¶ 25. Mr. Weiss testified that the potential payoff from the interest was in the tens of millions of dollars. Id.[3] Mr. Weiss held this performance interest until June 2013, more than two years after he began working with Mr. Guarriello. Id. Mr. Weiss avers, however, that "no compensation was received from this agreement," Weiss Aff. ¶ 72 [#132], which the court accepts as true on Plaintiffs' motion for summary judgment. Mr. Weiss did not disclose to Mr. Guarriello that he held this performance interest in Biosyntec until after the complaint was filed in this case. Theodore Guarriello Aff. Supp. Pls.' Mot. Summ. J. [hereinafter "Guarriello Aff."] ¶ 19 [#111].[4]

Between 2010 and 2013, Mr. Weiss steered more than $40 million of his clients' monies to Biosyntec and its affiliates. Pls.' Facts ¶ 28 [#110-1]. Between 2010 and 2012, Biosyntec and its affiliates transferred hundreds of thousands of dollars to entities related to Mr. Weiss. Id.

---

[3] Mr. Weiss also testified that in January 2011, in connection with a continuing line of credit, he told his bank that he had a five percent stake in Biosyntec. Hanna Decl. Ex 30 34-35 [#112-60]. Mr. Weiss later testified that the purported five percent stake was a reference to the "performance interest" mentioned above. Id. Mr. Weiss further testified that he told the bank that this interest was worth $24.3 million. Hanna Decl. Ex 30 35 [#112-60].

[4] In addition to these interests in Biosyntec, Mr. Emami offered Mr. Weiss a personal incentive for "50,000 warrants" valued at €27,000 or $405,000 if Mr. Weiss were to find over €6 million in investments for Biosyntec. Pls.' Facts ¶ 27. There is no evidence in the record that Mr. Weiss accepted this offer.

Those transfers were made shortly after Mr. Weiss' clients and FEP Fund I invested millions of dollars in Biosyntec subsidiaries and affiliates Biosyntec Polska SP Zoo ("Biosyntec Polska"), Globe 360 Tobacco, Inc. ("Globe 360"), Falcon-Peregrine Family, LLC ("Falcon-Peregrine"), and Karien Sp Zoo ("Karien"). Id.

One of the accounts into which Biosyntec affiliates deposited funds for Mr. Weiss was a checking account for a company known as Weiss Capital Real Estate Group, LLC ("Weiss Capital"). Id. For example, on or about July 29, 2010, two clients of Mr. Weiss separately invested $3.5 million and $1 million Biosyntec Polska. Id. Less than a week later, on or about August 3, 2010, Falcon-Peregrine wired $75,000 to the Weiss Capital account. Id. Similar transactions occurred numerous times. See id. Bank records for the Weiss Capital account reveal that throughout 2010 to 2014, Mr. Weiss made cash withdrawals from that account, transferred money to himself and paid for personal expenses including credit card bills, car loans, cab fare, gas, hotels, meals, and grooming. Id. ¶ 29. None of the Defendants disclosed to Mr. Guarriello that Mr. Weiss had received these payments from Biosyntec affiliates in connection with Mr. Weiss' clients investing in Biosyntec. Id. ¶ 30.[5]

## C.  Investment in Biosyntec Polska

On January 24, 2011, Plaintiffs invested $2 million in Biosyntec Polska on Mr. Weiss' recommendation. Id. ¶ 31. Around 2010, the FEP, LP partner in charge of due diligence and evaluating all prospective direct investments for FEP, LP clients had refused to recommend

---

[5] Mr. Weiss avers that "FEP and MIP Global [Inc. (another Weiss-related entity)] received reimbursements of it's (sic) direct investment expenses from Biosyntec SA. These expenses included due diligence, legal, and consulting costs as well as other direct costs incurred by the firm on behalf of the investment." Weiss Aff ¶ 67 [#132]. The court accepts as true, for purposes of summary judgment, that Biosyntec reimbursed Weiss-related entities for expenses that those entities incurred on Biosyntec's behalf. That those reimbursements occurred in conjunction with investments in Biosyntec from Weiss clients is not disputed, however.

Biosyntec Polska as an investment. Id. ¶ 33; Hanna Decl. Ex. 29 13 [#112-58]. Mr. Weiss

ignored that recommendation and recommended the investment to Mr. Gaurriello anyway. Pls.'

Facts ¶ 33 [#110-1]; Hanna Decl. Ex. 29 13 [#112-58].

While the nature of Plaintiffs' Biosyntec Polska investment is not entirely clear, the

investment was supposed to return monthly interest payments of $15,000. Pls.' Facts ¶ 35 [#110-

1]. In reality, the interest payments were sporadic and, around May 2011, Mr. Emami warned

Mr. Weiss that Biosyntec Polska would not be able to make interest payments on outstanding

"loans" to Biosyntec affiliates such as Mr. Guarriello's. Id. ¶ 39. Mr. Imami did, however,

represent that missing payments would be made "by the end of next July at the latest." Hanna

Decl. Ex 31 21 [#112-62]. On July 21, 2011, Mr. Emami sent an email to Mr. Weiss confirming

receipt of an additional $2.5 million loan from another Weiss investor, "upon receipt" of which

Mr. Emami stated "Biosyntec SA will make the required transfers to bring the existing FEP

sourced loans current through August 15, 2011." Pls.' Facts ¶ 37 [#110-1].[6] On August 5,

2011—less than one week after the new $2.5 million investment in Biosyntec Polska—Falcon-

Peregrine (another Biosyntec affiliate) sent $50,000 to the Weiss Capital bank account. Id. ¶ 38.

On August 15, 2011, Plaintiffs further received the first interest payment on the Biosyntec Polska

note since May 15, 2011. Id. ¶ 39.

The Biosyntec Polska loan was scheduled to come due September 15, 2012. Id. ¶ 40.

Though Biosyntec Polska had missed several periodic interest payments, it did partially catch up

---

[6] Mr. Weiss' unsworn response to Plaintiffs' statement of material facts states that he
"completely rejected" Mr. Emami's suggestion that one investor's monies be used to pay interest
owed to any investor. Weiss Resp. Pls.' Facts ¶ 37 (mislabeled as ¶ 36) [#139]. This assertion is
not properly supported by evidence or sworn testimony. The undisputed evidence shows that
Plaintiffs received no interest payments on the Biosyntec Polska loan for June or July 2011 but
did receive a large interest payment on August 15, 2011, after the other investor's funds were
received by Biosyntec.

and ultimately paid $250,849.32 of the $255,000.00 in interest due on Plaintiffs' investment

through July 2012. Id. ¶ 39. However, Plaintiffs received no payment from Biosyntec Polska

after the final interest payment in July 2012. Id. ¶ 40. The $2 million principal was never

returned. Id. ¶ 41. Mr. Weiss states that he did not receive any compensation from Biosyntec or

any related entity for Mr. Guarriello's investment in Biosyntec Polska. Weiss Aff. ¶ 66 [#132].

### D. Investment in FEP Fund I

On January 1, 2011, on Mr. Weiss' recommendation, Plaintiffs invested $4 million in

FEP Fund I. Pls.' Facts ¶ 44 [#110-1]; Weiss Aff. ¶ 80 [#132].

> FEP Fund I's Private Placement Memorandum states that the fund's portfolio
>
> will consist primarily of interests in Underlying Portfolios. The Fund portfolio
> may also invest up to ten percent (10%) of its assets in transactions structured by
> managers (which may be affiliates or non-affiliates of the General Partner [FEP,
> LP]), other co-investment transactions, seed-capital investments representing
> profit-sharing interests in managers of hedge funds and other investment products,
> and certain other direct investments ('Direct Investments').

Guarriello Aff. Ex. 39 10 [#111-43].

In December 2011, FEP Fund I loaned $2 million (8.4% of its assets) to Biosyntec

Polska, increasing Plaintiffs' overall investment in Biosyntec Polska by $300,000. Pls.' Facts

¶ 49 [#110-1]. This investment was made after Biosyntec Polska had missed several interest

payments on Plaintiffs' direct investment and after FEP, LP employees had expressed concerns

about the mounting arrearages on Biosyntec Polska's other loans. Id. ¶ 50.

Around May 2012, FEP Fund I further invested $7 million in another Bioysntec

subsidiary named Globe 360. Id. ¶ 51. Around June 21, 2012, FEP Fund I invested another $1

million in Globe 360, followed by an additional $1 million about one week later. Id. Mr. Weiss

made each of these investment decisions for FEP Fund I. Id. During the third quarter of 2014,

Globe 360 defaulted on these private loans, never paying any of the promised interest nor

returning the principal. <u>Id.</u>

Around June 8 or 11, 2012 respectively, FEP Fund I further invested $1 million and $1.5 million in Karien, yet another Biosyntec affiliate. <u>Id.</u> ¶ 52. Again, Mr. Weiss made these investment decisions. <u>Id.</u> By September 2012, Karien had defaulted on the investment. <u>Id.</u>

By the middle of 2012, FEP Fund I's direct investments of $13.5 million in these three Biosyntec affiliates (Biosyntec Polska, Globe 360, and Karien) represented 43.13 percent of the fund's portfolio, in contravention of the fund's 10 percent ceiling on direct investments. <u>Id.</u> ¶ 53. FEP Fund I's direct investments continued to exceed the 10 percent ceiling through 2013, though this was never disclosed to Mr. Guarriello. <u>Id.</u> ¶ 54. Rather, on May 15, 2014, Mr. Weiss sent Mr. Guarriello a letter asking for permission to change the restrictions on FEP Fund I's Private Placement Memorandum to remove the 10 percent direct investments ceiling, stating that "[t]he fund manager would like to make more direct equity, fixed income, and hedge fund investments and utilize fewer fund of funds." <u>Id.</u> This email did not reveal that "the fund manager" (FEP, LP) had been exceeding the 10 percent ceiling since 2012. <u>Id.</u> Mr. Guarriello never agreed to this proposed change. <u>Id.</u>

Mr. Weiss also had FEP Fund I invest in a different Weiss-created hedge fund that in turn invested in Biosyntec subsidiaries. <u>Id.</u> ¶ 55. Around February 1, 2012, FEP Fund I invested $1.6 million in Weiss' Catamaran Holding Fund, Ltd. <u>Id.</u> Catamaran Holding Fund Ltd. then invested $1 million in Karien around April 2, 2012. <u>Id.</u> Around June 1, 2012, Catamaran Holding Fund Ltd. further invested $1 million in Globe 360. <u>Id.</u> Mr. Weiss made both of these investment decisions for Catamaran Holding Fund Ltd. <u>Id.</u>

### E. Investment in Falcon-Peregrine

Around April 2012, Mr. Weiss recommended that Mr. Guarriello invest $1 million

directly in Karien (a subsidiary of Falcon-Peregrine). Weiss Aff. ¶ 73 [#132]. Karien had won a bank auction to purchase gas turbines. Id. According to Mr. Weiss, he discussed the $1 million investment with Mr. Guarriello over the phone and Mr. Guarriello agreed to it. Id. ¶¶ 74, 75. On April 11, 2012, Mr. Weiss' assistant sent Mr. Guarriello an email with the subject line "Wire LOA Biosyntec Turbines Guarriello," requesting that Mr. Guarriello sign a wire authorization to transfer $1 million to an account held by Falcon-Peregrine. Weiss Aff. ¶¶ 76-77, Ex. 2 [#132-2]. Mr. Guarriello authorized the transfer. Weiss Aff. ¶ 78 [#132].

In an email dated August 13, 2012 to Mr. Guarriello and his accountant, Mr. Weiss stated that nine percent interest on this Karien investment was to be paid in full together with the principal when the investment matured on September 13, 2012. Guarriello Aff. Ex. 5 5 [#111-5]. However, interest was never paid on this investment and the principal was never returned. Pls.' Facts ¶ 58 [#110-1].

Mr. Guarriello's accountant asked Mr. Weiss and FEP, LP to produce copies of documents evidencing this Falcon-Peregrine investment, but they never did. Id. ¶ 59. In response to Mr. Guarriello's demand letter preceding this litigation, counsel for Defendants produced a document dated April 2, 2012 (nine days before Mr. Guarriello actually invested the $1 million at issue) that purports to be a financing agreement between Mr. Guarriello and Karien. Id. This document represents that Mr. Guarriello agreed to provide $1 million to Karien to buy two second-hand gas turbine engines in Tunisia, notwithstanding the absence of Mr. Guarriello's signature. Id. ¶ 60. The document further states that Karien

> will reimburse the total amount mentioned above [$1 million] either directly to the Financier or for him/her to his/her representative, by the following date and under the following conditions, with which the Company explicitly promises to comply.

> 1. The profit of the operation is shared between the parties 50/50 after the

obligation in item two is fully met.

> 2. The first profit is paid by priority to the Financier up to a limit equal to a 30%
> Annual IRR [Internal Rate of Return] within a period of 90 (ninety) days from the
> date of receipt of the funds in the Company's bank account.

The document is signed by Iman Emami as CEO of Karien, but the signature block for the
purported Financier, Mr. Guarriello, is blank. Id. Although the financing agreement purported to
share 50 percent of the profits with Mr. Guarriello, similar documents promised at least five
other investors "50 percent" of the profits of the same gas turbine venture. Id. ¶ 61.

### F. Investment in I-DEA Investment Fund Ltd.

In August 2013, Plaintiffs authorized the transfer of $300,000 to an account in Florida in
the name of the I-DEA Investment Fund, Ltd. ("I-DEA Fund"), on Mr. Weiss' recommendation.
Id. ¶ 80. Later, Mr. Guarriello noticed that the $300,000 investment was not reflected in FEP,
LP's quarterly portfolio appraisal. Id. Mr. Guarriello raised concerns to FEP, LP about what
happened to the $300,000 investment in an email dated January 24, 2014. Guarriello Aff. Ex. 29
1 [#111-32]. Bud Abbot, one of FEP, LP's senior directors, replied, "I do not think you are
invested in that fund. I will double check but Lee might have sent it mistakenly." Guarriello Aff.
Ex. 29 1 [#111-32]. When Mr. Guarriello pressed the matter, Mr. Abbott acknowledged that the
investment was received even though it was not reflected in any of the reports FEP, LP had sent.
Pls.' Facts ¶ 81 [#110-1]. FEP, LP, however, never provided any documentation that the
$300,000 was used for its intended purpose. Id. ¶ 81. According to an unauthenticated document
titled "Investor Summary" provided by Mr. Weiss, Mr. Guarriello's capital account in the I-DEA
Fund was worth $366,623.64 as of September 2015. Weiss Aff. ¶ 103, Ex. 4 [#132-4]. Mr.
Guarriello's investment in the I-DEA Fund has not been returned to him. Pls.' Facts ¶ 81 [#101].

### G.  Mr. Guarriello's Redemption Request to FEP Fund I

On January 31, 2014, Mr. Guarriello fired FEP, LP, FEP, LLC and Mr. Weiss as his

investment advisors. Pls.' Facts ¶ 82 [#110-1]. Mr. Guarriello subsequently sought return of his

$4 million investment in FEP Fund I. Id. ¶ 83.

Pursuant to the redemption provisions outlined in FEP Fund I's Private Placement

Memorandum, limited partners holding "Class A Interest" in the fund, such as Plaintiffs, may

submit a redemption request no less than 190 days prior to their requested redemption date.

Guarriello Aff. Ex. 39 14 [#111-43]. Such limited partners may request a redemption of five

percent of the value of their interest in the fund at any time and may request a full redemption to

occur no later than one year after the interest in the fund was initially purchased, provided in

both cases that the 190-day notice requirement is complied with. Id. at 14-15. The Private

Placement Memorandum provides that the fund shall pay the amount of the redemption request

within ninety days of the effective redemption date. Id. at 15. The memorandum further provides

that

> [t]he Fund may limit redemptions based on the aggregate Redemption Requests
> made at the relevant time of determination by all Limited Partners in the Fund.
> This limitation or 'gate' will apply when the satisfaction of all Redemption
> Requests made in any calendar year would result in a ten percent (10%) or greater
> reduction in the net asset value of the Fund at the time of determination.

Id. at 14.

Pursuant to these provisions, Mr. Guarriello asked for and did receive a redemption of

five percent of his investment in FEP Fund I, or $205,490.56, on or about February 5, 2014. Pls.'

Facts ¶ 83 [#110-1]. On April 29, 2014, Mr. Guarriello sent an email to Mr. Weiss seeking to

redeem the remainder of his interest in FEP Fund I, which Mr. Weiss acknowledged. Guarriello

Aff. Ex. 38 [#111-41]. Plaintiffs' redemption request was to be honored on December 31, 2014,

but none of Plaintiffs' remaining interest in FEP Fund I has been returned. Pls.' Facts ¶ 83 [#110-1].

### H.  Advisory Fees

Under the Investment Advisory Agreement, FEP, LP was entitled to an advisory fee of one percent of the value of the assets under management each year, payable in advance in quarterly installments. Id. ¶ 12. The Investment Advisory Agreement also permitted FEP, LP to appoint sub-advisers to manage Mr. Guarriello's portfolio and entitled those sub-advisers to charge their own separate sub-advisory fees, provided FEP, LP notified Mr. Guarriello of their appointment beforehand. Id. ¶ 76. According to Mr. Weiss, each quarter, FEP, LP's billing department sent Mr. Guarriello a bill, advising him of the advisory fees and how they were calculated before they were deducted from his accounts. Weiss Aff. ¶ 111 [#132]. Mr. Guarriello was also asked to inform FEP, LP if he had any questions about his bill. Id. ¶ 112. Mr. Weiss avers he was not involved in calculating or charging Plaintiffs' advisory or sub-advisory fees. Id. ¶ 121.

Plaintiffs were overcharged advisory fees in several ways. First, for several quarters, Plaintiffs were charged advisory fees twice on the money invested in FEP Fund I. Pls.' Facts ¶ 69 [#110-1]. This happened because FEP, LP received a management fee of 1 to 1.25 percent per annum on monies invested in FEP Fund I, and FEP, LP received a separate advisory fee based on the value of all of Plaintiffs' assets under management. Id. FEP, LP had agreed to deduct the value of Plaintiffs' investment in FEP Fund I from FEP, LP's portfolio appraisals, so as to avoid billing them twice for that money. Id. However, this was not always done. Id. ¶ 70.

Specifically Plaintiffs' investment in FEP Fund I was deducted from FEP, LP's portfolio appraisals during the first six quarters (Q1 2011 through Q2 2012), was not deducted for the next

four quarters (Q3 2012 through Q2 2013), was deducted for the next quarter (Q3 2013), and was not deducted for the following two quarters (Q4 2013 and Q1 2014). Id.

Second, the $2 million defaulted Biosyntec Polska investment was included in Plaintiffs' portfolio appraisals for three quarters after that loan defaulted and Biosyntec Polska failed to return the principal. Id. ¶ 73. Similarly, the $1 million defaulted Falcon-Peregrine loan was included in Plaintiffs' portfolio appraisals for five quarters after that loan defaulted. Id. Adding the value of these two defaulted investments to Plaintiffs' portfolio appraisals inflated the value of the portfolio and, as a result, the investment advisory fees that FEP, LP charged.

Third, FEP, LP withdrew more than $33,000 from Plaintiffs' Fidelity accounts, above and beyond the advisory fees Plaintiffs were actually billed. Id. ¶ 74.

Fourth, Plaintiffs were overcharged sub-advisory fees. Id. ¶ 76. At some point, FEP, LP began using Catamaran Management, Inc. as a sub-advisor, but never provided Mr. Guarriello the required notice. Id. ¶ 76. While Defendants' interrogatory responses state that Mr. Guarriello was provided notice of some sub-advisors' appointment, Mr. Weiss does not contend Mr. Guarriello was ever provided notice of Catamaran Management, Inc.'s appointment. Hanna Aff. ¶ 21 [#112]. Moreover, Defendants have not identified how much of the $31,544.77 in total sub-advisory fees charged to Plaintiffs were charged by Catamaran Management, Inc. Id. ¶ 21.

## I. Margin Interest

When Mr. Weiss was soliciting Mr. Guarriello's business in 2010, he spoke about the advantages of investing on margin—*i.e.* investing with borrowed money. Pls.' Facts ¶ 64 [#110-1]. He further told Mr. Guarriello that he could secure a favorable rate of interest on the amounts borrowed based on his relationship with Fidelity and that Mr. Guarriello would never have to pay more than "approximately 1.5%" margin interest. Id. However, after the Investment Advisory

Agreement was signed, Mr. Guarriello paid interest rates on his margin investments generally around 5.6 percent per annum and as high as 7.35 percent per annum. Id. ¶ 65.

In August 2011, Mr. Guarriello noticed the discrepancy. Id. ¶ 66. After Mr. Guarriello and his accountant complained, FEP, LP spoke with Fidelity, and Fidelity lowered the rate to 1.6 percent around September 2011. Id.; see also Guarriello Aff. Ex. 15 1 [#111-18]. By October 2011, approximately $58,415.00 in margin interest overcharges were credited to Mr. Guarriello's Fidelity accounts, but without interest for the time value of the overcharged amount. Id. Mr. Weiss avers that Fidelity Investments alone controlled the calculation and billing of margin "expenses," including margin interest. Weiss Aff. ¶¶ 30-33, 40 [#132].

## II.  Discussion

Plaintiffs seek summary judgment for five causes of action against Mr. Weiss: (1) breach of fiduciary duty; (2) fraud; (3) conversion; (4) breach of contract; and (5) violation of Mass. Gen. Laws. ch. 93A. A movant is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of fact exists if the issue can be resolved in favor of either party. Calero-Cerezo v. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). Facts are material only if they have the potential to affect the outcome of the case. Id.

Plaintiffs also seek default judgment against FEP, LP and FEP, LLC for the same five causes of action.

### A.  Count I—Breach of Fiduciary Duty

A cause of action for breach of fiduciary duty requires (1) the existence of a fiduciary duty arising out of a relationship between the parties; (2) breach; (3) damages; and (4) causation. Hanover Ins. Co. v. Sutton, 705 N.E.2d 279, 288-89 (Mass. App. Ct. 1999). A fiduciary

relationship is one in which one party "is under a duty to act for or to give advice for the benefit

of another upon matters within the scope of the relation." Restatement (Second) of Torts § 874(a)

cmt. a (1979). To establish that a fiduciary duty arose from the relationship between the parties, a

plaintiff must show "at least that the relationship was one of trust and confidence; that the

plaintiff[] relied upon the specialized knowledge of [the defendant]; and that [the defendant] was

aware of the plaintiff['s] reliance upon [him]." Davidson v. Gen. Motors Corp., 786 N.E.2d 845,

849 (Mass. App. Ct. 2003). A breach of fiduciary duty occurs if the fiduciary fails to "fully

disclose all known material information to the person to whom he owes the duty." Greenleaf

Arms. Realty Trust, I, LLC v. New Bos. Fund, Inc., 962 N.E.2d 221, 229 (Mass. App. Ct. 2012);

see also id. (noting that "good faith" requires a fiduciary "to make 'a full and honest disclosure

of all relevant circumstances to permit a disinterested decisionmaker to exercise its informed

judgment.'" (quoting Dynan v. Fritz, 508 N.E.2d 1371, 1378 (Mass. 1987))).

   *1.  Mr. Weiss*

   A fiduciary relationship existed between Mr. Weiss and Mr. Guarriello, as Mr. Weiss

held himself out as having specialized knowledge, Mr. Guarriello placed his trust and confidence

in Mr. Weiss' investment recommendations and Mr. Weiss knew that Mr. Guarriello relied on

his advice in making his investment decisions. Indeed, after meeting with Mr. Weiss, Mr.

Guarriello gave Mr. Weiss full discretionary authority over his portfolio and followed through on

Mr. Weiss' investment recommendations. Mr. Weiss thus knew that Mr. Guarriello was relying

on his advice.

   Mr. Weiss breached his fiduciary duty to Plaintiffs in numerous ways with respect to the

Biosyntec investments, including Plaintiffs' investment in FEP Fund I which was itself heavily

invested in Biosyntec. First, Mr. Weiss' failure to disclose his "performance interest" in

Biosyntec's financial success, while recommending that Plaintiffs invest $2 million in Biosyntec Polska and $1 million in Falcon-Peregrine, was an omission of material fact and a breach of his fiduciary duty. Mr. Weiss' failure to disclose to Mr. Guarriello that the investment had not been recommended by FEP, LP's partner responsible for due diligence, that Biosyntec was having trouble making interest payments while Mr. Guarriello was investing in it, and that Biosyntec Polska caught up on interest payments on at least one occasion only shortly after a Weiss investor had invested $2.5 million in a related entity were further omissions of information material to Mr. Guarriello's decision whether to invest in the company.

Mr. Weiss' failure to disclose that Biosyntec affiliates transferred money to him in connection with client investments Mr. Weiss directed to Biosyntec was a further omission of material information. Though Mr. Weiss has suggested the payments he received from Biosyntec through the Weiss Capital account were reimbursement for expenses Mr. Weiss and his companies had previously incurred on Biosyntec's behalf, that those reimbursements occurred once Mr. Weiss steered investor money to Biosyntec is undisputed. Accordingly, accepting Mr. Weiss' version of the facts, Biosyntec owed a debt to Mr. Weiss and his companies, and that debt was repaid when Mr. Weiss got clients to invest in the company. It stands to reason that Mr. Weiss and his companies would not have been repaid but for new client investments, and that this interest should have been disclosed to Mr. Guarriello.

Similarly, Mr. Weiss' failure to disclose to Mr. Guarriello that FEP Fund I had exceeded its ten percent ceiling on direct investments primarily by investing heavily in Biosyntec affiliates also breached his fiduciary duties. Mr. Weiss not only omitted this information but affirmatively misled Mr. Guarriello when he ostensibly asked for permission to raise FEP Fund I's ceiling on direct investments, because that request implied that the ceiling had not yet been breached when

it had been breached for several months.

Mr. Weiss makes several arguments as to why he breached no fiduciary duties. First, Mr. Weiss argues that there is no basis to hold him personally liable for Plaintiffs' investments, because only FEP, LP was Plaintiffs' contracted investment advisor, not Mr. Weiss himself. While it is true that FEP, LP owed fiduciary obligations to Plaintiffs as Plaintiffs' investment advisor, SEC v. Capital Gains Research Bureau, 375 U.S. 180, 194 (1963), Mr. Weiss also owed fiduciary duties to Plaintiffs due to his relationship of trust and confidence with Mr. Guarriello. Moreover, that Mr. Weiss may have been acting as agent for FEP, LP or in his scope of employment with FEP, LP when recommending investments to Mr. Guarriello does not absolve him of personal liability stemming from those recommendations. See Lyon v. Morphew, 678 N.E.2d 1306, 1308 (Mass. 1997) ("Employees are liable for torts in which they personally participated."); Somers v. Osterheld, 138 N.E.2d 370, 373 (Mass. 1956) ("The fact that one is an agent does not necessarily preclude his liability for torts."); Restatement (Third) of Agency § 7.01(b) (2006) (stating that an agent is liable for his torts, even if acting with authority on behalf of a principal).

Mr. Weiss further suggests that he did not need to disclose his performance interest in Biosyntec to Mr. Guarriello because that interest was acquired through another client's investment in Biosyntec as a means of compensating Mr. Weiss. Regardless of how the interest was acquired, however, it created a conflict of interest for Mr. Weiss because Mr. Weiss stood to gain personally from Mr. Guarriello investing money in Biosyntec, even if it was not a sound investment for Mr. Guarriello. Mr. Weiss' duty of loyalty and good faith required him to, at the very least, disclose to Mr. Guarriello that he held this interest so that Mr. Guarriello could consider his investment recommendations accordingly.

Mr. Weiss similarly contends that he could not have disclosed his interest in Biosyntec because the client compensation agreement through which it was obtained is confidential. However, Mr. Weiss could have disclosed that he held a performance interest in Biosyntec without revealing the client through whom the interest was obtained. Moreover, to the extent Mr. Weiss could not have disclosed anything about his interest, then Mr. Weiss should not have recommended any investment for which he could not disclose all material information.

In addition, Mr. Weiss states that he did not receive any "compensation" as a result of Mr. Guarriello's investment in Biosyntec Polska. Weiss Aff. ¶ 66 [#132]. Mr. Weiss does not, however, dispute that he retained the performance in Biosyntec until more than two years after Mr. Weiss recommended that Plaintiffs invest in Biosyntec Polska, nor does he dispute that both before and after Plaintiffs invested in Biosyntec Polska, Biosyntec affiliates transferred payments to the Weiss Capital account. Pls.' Facts ¶ 28 [#101]. Accordingly, Mr. Weiss had at least a potential personal interest in the continued financial success of and flow of investor funds to Biosyntec, which should have been disclosed. Cf. Vernazza v. S.E.C., 327 F.3d 851, 859 (9th Cir. 2003) (stating that potential conflicts of interest are material facts that must be disclosed under the Investment Advisers Act) (citing SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 201 (1963)).

For all of the foregoing reasons, the undisputed facts establish that Mr. Weiss breached his fiduciary duties to Plaintiffs by failing to disclose material information about their investments in Biosyntec, including those investments made through FEP Fund I.

To the extent that Plaintiffs allege that Mr. Weiss breached his fiduciary duties by overcharging Mr. Guarriello advisory or sub-advisory fees, however, Mr. Weiss avers that he had no involvement in calculating or charging such fees by FEP, LP and that such charges were

assessed by FEP, LP's billing department. Weiss Aff. ¶¶ 105, 121 [#132]. Similarly, to the extent Plaintiffs assert that Mr. Weiss breached his fiduciary duties by overcharging Plaintiffs margin interest, Mr. Weiss avers that margin interest was calculated and charged by Fidelity Investments alone and that he had no role in that process. Id. ¶ 40. This assertion creates a dispute of fact as to whether Mr. Weiss breached any duties to Plaintiffs through FEP, LP's assessment of advisory fees or the assessment or margin interest.

In addition, to the extent Plaintiffs contend that Mr. Weiss breached fiduciary duties with respect to the $300,000 investment in the I-DEA Fund, however, there are disputes of fact as to the nature of that investment that preclude summary judgment. Plaintiffs point to no misrepresentation by Mr. Weiss that induced Mr. Guarriello to make that investment. Plaintiffs appear to contend that the monies intended for that investment were misappropriated and not properly invested as they never appeared in Plaintiffs' portfolio appraisals. Mr. Weiss has, however, provided a document that purports to show that the value of Mr. Guarriello's investment in the I-DEA Fund was $366,623.62 as of September 2015. Weiss Aff. Ex. 4 [#132-4]. Accordingly, there is a dispute of fact as to whether any duties were breached by Mr. Weiss with respect to this investment.

### 2. *FEP, LP and FEP, LLC*

It is undisputed for the purposes of Plaintiffs' motion for default judgment against FEP, LP and FEP, LLC that those defendants were Plaintiffs' fiduciaries and breached their fiduciary duties as Mr. Weiss did, in connection with the Biosyntec investments (including the investment in FEP Fund I). In addition, it is undisputed that for the purposes of Plaintiffs' motion for default judgment that FEP, LP and FEP, LLC breached their fiduciary duties by charging Plaintiffs advisory and sub-advisory fees to which they were not entitled. Accordingly, Plaintiffs are

entitled to default judgment against FEP, LP and FEP, LLC on Count I. To the extent Plaintiffs assert that FEP, LP and FEP, LLC breached their fiduciary duties with respect to the I-DEA Fund investment, however, taking the allegations of the complaint and other undisputed evidence as true, the record does not establish that any duty was breached by Defendants recommending that investment.

### B.   Count II—Fraud

A cause of action for fraud requires that "the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and the plaintiff relied upon the representation as true and acted upon it to [his] damage." Masingill v. EMC Corp., 870 N.E.2d 81, 88 (Mass. 2007) (citation and quotation omitted). "[W]here an investment advisor owes a fiduciary duty of disclosure to his or her client and violates the act by misleading the client regarding the suitability of an investment, Massachusetts law deems it fraudulent concealment for the fiduciary to fail to reveal to the client that the investment was not suitable. . . ." Hays v. Ellrich, 31 N.E.3d 1064, 1076 (Mass. 2015); see also Maggio v. Gerald Freezer & Ice Co., 824 F.2d 123, 130 (1st Cir. 1987) (noting that where "a fiduciary relationship exists . . . a mere failure to reveal information may be sufficient to constitute fraudulent conduct") (applying Massachusetts law).

In light of the extent to which the legal standard for misrepresentation tracks that for breach of fiduciary duty, each of the non-disclosures and breaches related to Biosyntec and FEP Fund I that give rise to liability against each Defendant under Count I similarly give rise to liability against Defendant under Count II. Accordingly, Plaintiffs are entitled to judgment as to Mr. Weiss, FEP, LP and FEP, LLC on Count II to the same extent as Count I.

### C. *Count III—Conversion*

An action for conversion requires proof that the defendant "intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he has no right of possession at the time . . . ." Abington Nat'l Bank v. Ashwood Home, Inc., 475 N.E.2d 1230, 1233 (Mass. App. Ct. 1985). Where a defendant legitimately acquires possession of the property, a plaintiff must demand return and the defendant must refuse such return for the plaintiff to maintain an action for conversion. Id. at 1232-33 (citing Atl. Fin. Corp. v. Galvam, 39 N.E.2d 951, 952 (Mass. 1942)).

Plaintiffs' conversion claim is based on the excess advisory fees Plaintiffs were charged and Defendants' failure to return the monies Plaintiffs invested "after Mr. Guarriello fired them, after Mr. Guarriello invoked the redemption provisions in FEP Fund I's private placement memorandum, and after Mr. Guarriello sent the Defendants a formal demand letter." See Pls.' Mem. Law Supp. Mot. Summ. J. 9 [#110]; see also Compl. ¶ 94 [#1]. [7]

#### 1. *Mr. Weiss*

As to advisory fees, Plaintiffs have demonstrated that FEP, LP charged (and withdrew) advisory and sub-advisory fees in excess of that to which it was entitled in the amount of

---

[7] The Complaint [#1] specifically identifies the advisory fees and the investment in Karien (*i.e.* the gas turbine "financing agreement") as the bases for the conversion cause of action. See Compl. ¶ 94 [#1]. Plaintiffs' brief, however, does not suggest that Plaintiffs seek summary judgment on their conversion claim based on the Karien investment. See Pls.' Mem. Law Supp. Mot. Summ. J. 9 [#110]. Moreover, Mr. Weiss has disputed Plaintiffs' contention that Mr. Guarriello did not approve the Karien investment, claiming that the two men discussed the agreement over the phone and that Mr. Guarriello agreed to the investment. See Weiss Aff. ¶¶ 73-74 [#132]. Accordingly, there appears to be a material dispute of fact as to that issue and summary judgment on that basis is not warranted. To the extent the Complaint can be construed to assert that the failure to return Plaintiffs' investment in FEP Fund I is also a basis for Plaintiffs' conversion claim (as Plaintiffs' summary judgment brief suggests), the court finds summary judgment as to Mr. Weiss also unwarranted on that basis for the reasons set forth herein.

$171,748.21. Pls.' Facts ¶¶ 75-76 [#110-1]. However, as noted above, Mr. Weiss avers that he had no involvement in or responsibility for calculating or withdrawing the advisory fees charged by FEP, LP. Weiss Aff. ¶ 121 [#132]. This assertion creates at least a dispute of fact as to whether Mr. Weiss personally exercised wrongful control over excess advisory fees.

Moreover, to the extent Plaintiffs suggest that FEP, LLC and FEP, LP were the alter egos of Mr. Weiss and that the court should disregard the form of those entities to hold Mr. Weiss liable for their conversion of advisory fees (an argument not raised in Plaintiffs' briefing but summarily mentioned at the summary judgment hearing), Plaintiffs have not met their burden of establishing the facts necessary to do so on summary judgment.

The same goes for the $4 million invested in FEP Fund I that was not returned after Mr. Guarriello asked to redeem his investment, to the extent that forms the basis of the conversion cause of action. Plaintiffs introduce no evidence of Mr. Weiss' personal involvement in FEP, LP's (FEP Fund I's general partner) refusal to honor Plaintiffs' redemption request and insufficient evidence to treat FEP, LP as Mr. Weiss' alter ego on summary judgment. Accordingly, the court denies summary judgment against Mr. Weiss for Count III.

2. *FEP, LP and FEP, LLC*

It is undisputed for the purposes of Plaintiffs' motion for default judgment that FEP, LP and FEP, LLC converted $171,748.21 of Plaintiffs' monies in the form of advisory and sub-advisory fees in excess of that to which they were entitled. Accordingly, Plaintiffs are entitled to default judgment as to FEP, LP and FEP, LLC on Count III. Taking the allegations of the complaint and other undisputed evidence as true, however, the record does not establish that FEP, LLC and FEP, LP wrongfully converted Plaintiffs' investment in FEP Fund I.

### D. Count IV—Breach of Contract

The only contract at issue here is the Investment Advisory Agreement. That agreement contains a choice of law provision that states the contract shall be interpreted in accordance with Massachusetts law. See Hanna Decl. Ex. 4 20 [#112-4]. A breach of contract claim under Massachusetts law requires proof that the parties had a valid agreement, the defendant breached the agreement, and the plaintiff sustained damages. Michelson v. Dig. Fin. Servs., 167 F.3d 715, 720 (1st Cir. 1999).

Plaintiffs contend that the actions constituting breach of the Investment Advisory Agreement were FEP, LP investing Plaintiffs' assets in investments that did not match Mr. Guarriello's risk tolerance, improperly valuing Plaintiffs' portfolio which resulted in excess advisory fees, and withdrawing advisory fees in excess of those permitted by the agreement. Pls.' Mem. Law Supp. Mot. Summ. J. 10 [#110]; see also Compl. ¶¶ 97-100.

### 1. Mr. Weiss

Importantly, the Investment Advisory Agreement was between the Plaintiffs and FEP, LP, and was executed by Mr. Weiss on behalf of FEP, LLC (FEP, LP's general partner). Plaintiffs point to no agreement they had with Mr. Weiss that would support a breach of contract action against him, absent some basis to disregard the form of FEP, LP and FEP, LLC. To the extent Plaintiffs contend that Mr. Weiss is liable for breach of the Investment Advisory Agreement because he signed that agreement on behalf of FEP, LLC, that argument is unavailing because an agent is not liable for breach of contract of a disclosed principal. Bratcher v. Moriarty, Donoghue & Leja, P.C., 763 N.E.2d 556, 560-61 (Mass. App. Ct. 2002) (citing Porshin v. Snider, 212 N.E.2d 216, 217 (Mass. 1965)). Accordingly, in the absence of any contract between Plaintiffs and Mr. Weiss or further evidentiary support for disregarding the

corporate form of FEP, LP or FEP, LLC, the court denies Plaintiffs summary judgment on Count IV as to Mr. Weiss.

### 2. FEP, LLC

Taking the allegations of the complaint and the undisputed evidence as true, the record does not establish that Plaintiffs had a contract with FEP, LLC, for the reasons set forth above. Accordingly, Plaintiffs are not entitled to default judgment against FEP, LLC as to Count IV.

### 3. FEP, LP

It is undisputed for the purposes of Plaintiffs' motion for default judgment that Plaintiffs had a contract with FEP, LP and that FEP, LP breached that contract by advising Plaintiffs to make investments that did not match Mr. Guarriello's risk tolerance and by charging Plaintiffs advisory and sub-advisory fees in excess of that allowed by the contract. Accordingly, Plaintiffs are entitled to default judgment against FEP, LP on Count IV.

### E. Count V—Chapter 93A

To prove an unfair or deceptive practice in violation of Mass. Gen. Laws ch. 93A, a plaintiff must prove that the act (1) is "within at least the penumbra of common law, statutory, or other established concept of unfairness"; (2) is "immoral, unethical oppressive or unscrupulous"; and (3) causes substantial injury to consumers. PMP Assocs., Inc. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975). A "practice may be deceptive if it reasonably could be found to have caused the plaintiff to act differently than he or she otherwise would have acted." Mayer v. Cohen-Miles Ins. Agency, Inc., 722 N.E.2d 27, 33 (Mass. App. Ct. 2000) (citation omitted).

### 1. Mr. Weiss

The court concludes that Mr. Weiss' failure to disclose his financial interests in Biosyntec (including his performance interest and that Biosyntec repeatedly reimbursed Mr. Weiss for

expenses when Mr. Weiss steered investor monies to Biosyntec), while continuing to recommend those investments to Plaintiffs, misrepresenting the extent to which Plaintiffs' assets invested in FEP Fund I were concentrated in Biosyntec, and knowing that FEP, LP's due diligence team had refused to recommend the investment and that Plaintiffs had placed trust and confidence in his recommendations, was unfair and deceptive within the meaning of the Chapter 93A. See Underwood v. Risman, 605 N.E.2d 832, 835-36 (Mass. 1993) (stating that liability for Chapter 93A attaches "when there is a partial disclosure, misrepresentation, or false statement"). These false representations were causally connected to the loss of Plaintiffs' monies invested in Biosyntec related entities and FEP Fund I. See Fraser Eng'r Co., Inc. v. Desmond, 524 N.E.2d 110, 113 (Mass. 1988). Accordingly, Plaintiffs are entitled to summary judgment on Count V as it relates to misrepresentations and omissions regarding the Biosyntec and FEP Fund I investments.

Mass. Gen. Laws ch. 93A, § 11 mandates that, if the court finds for the plaintiff, "recovery shall be in the amount of actual damages; or up to three, but not less than two, times each amount if the court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation of [Mass. Gen. Laws ch. 93A, § 2]." While the cases are "unclear about what constitutes willful or knowing behavior. . . most of them tend to cluster around findings of . . . coercion or extortion . . . fraud and similar forms of misrepresentation . . . or abusive litigation." Incase Inc. v. Timex Corp., 488 F.3d 46, 58 (1st Cir. 2007) (collecting cases); see also Datacomm Interface, Inc. v. Computerworld, Inc., 489 N.E.2d 185, 197 (Mass. 1986) ("Actions involving fraudulent representations in knowing disregard of the truth encompass culpable, 'willful' behavior under the statute."); Shaw v. Rodman Ford Truck Ctr. Inc., 477 N.E.2d 413, 415 (Mass. App. Ct. 1985) ("[A] misrepresentation known to be

false when it is made can be found to be a 'knowing' violation of § 2."). Where there is a finding of willfulness or knowledge, a court's selection of multiplier between double and treble damages should be "[b]ased on the egregiousness" of the defendant's conduct. Int'l Fid. Ins. Co. v. Wilson, 443 N.E.2d 1308, 1316 (Mass. 1983).

The undisputed facts establish that Mr. Weiss knowingly and repeatedly misrepresented material facts concerning Plaintiffs' multi-million dollar investments, aware that Plaintiffs were relying on his investment recommendations. Moreover, Mr. Weiss recommended the Karien investment after he knew that Biosyntec was having trouble making payments on Plaintiffs' first Biosyntec Polska investment, and affirmatively misled Plaintiffs about the extent to which FEP Fund I had concentrated its assets in Biosyntec well after Plaintiffs' investments in Biosyntec Polska and Karien had defaulted. This fraudulent conduct was "knowing or willful" within the meaning of Chapter 93A. The court finds that an award of double rather than triple damages is appropriate. The damages resulting from Plaintiffs' Biosyntec and FEP Fund I investments total $6,794,509.44, which includes the value of the $2 million defaulted Biosyntec Polska investment, the $1 million defaulted Karien investment, and the $4 million FEP Fund I investment, less the $205,490.56 that has been returned to Plaintiffs. Accordingly, Plaintiffs' total Chapter 93A damages as to Mr. Weiss are $13,589,018.88.

2. *FEP, LP and FEP, LLC*

It is undisputed for the purposes of Plaintiffs' motion for default judgment that Defendants FEP, LP and FEP, LLC engaged in unfair and deceptive acts and practices in violation of Mass. Gen. Laws ch. 93A in advising Plaintiffs to invest in Biosyntec (including advising Plaintiffs to invest in FEP Fund I) and in charging excessive advisory and sub-advisory fees. The damages resulting from FEP, LP and FEP, LLC's Chapter 93A violations total

$6,966,257.65, which includes the value of the $2 million defaulted Biosyntec Polska investment, the $1 million defaulted Karien investment, the $4 million FEP Fund I investment (less the $205,490.56 that has been returned to Plaintiffs), and the $171,748.21 charged as excess advisory and sub-advisory fees. It is also undisputed for the purposes of the motion for default judgment that FEP, LP and FEP, LLC acted willfully and knowingly. Accordingly, an award of double damages is appropriate and Plaintiffs' total Chapter 93A damages against FEP, LP and FEP, LLC are $13,932,515.30.

   *F.  Prejudgment Interest*

   Plaintiffs' motions for default judgment and summary judgment request an award of prejudgment interest. "The decision whether to grant prejudgment interest [is] confided to the district court's broad discretion . . . ." S.E.C. v. Sargent, 329 F.3d 34, 40 (1st Cir. 2003) (citation omitted). The prejudgment interest rate in Massachusetts for fraud is 12 percent per annum, pursuant to Mass. Gen. Laws ch. 231, § 6B.  See Shawmut Comm. Bank, N.A. v. Zigami, 586 N.E.2d 962, 966 (Mass. 1992). Under that statute, interest is calculated "from the date of commencement of the action." Prejudgment interest at a rate of 12 percent per annum running from August 14, 2014 (the date the action was commenced) is warranted here, in order adequately compensate Plaintiffs for the lost time-value of their money.

   III. Conclusion

   For the foregoing reasons, Plaintiffs' Motion for Summary Judgment [#109] as to Mr. Weiss is ALLOWED as to Counts I, II and V, and DENIED as to Counts III and IV. Plaintiffs' Motion for Default Judgment [#100] as to FEP, LP and FEP, LLC is ALLOWED on all counts as to FEP, LP and on Counts I, II, III and V as to FEP, LLC. If Plaintiffs seek to pursue their claims against Mr. Weiss as to Count III and IV and their claims against FEP, LLC as to Count

IV, they shall notify the clerk by a status report as soon as practicable. If Plaintiffs are prepared to dismiss Counts III and IV as to Mr. Weiss and Count IV as to FEP, LLC, Plaintiffs shall submit a proposed final judgment and motion for attorneys' fees and costs as soon as practicable. The motion for attorneys' fees and costs shall set forth the attorneys' fees specifically attributable to Defendants Weiss, FEP, LP and FEP, LLC and exclude any fees attributable to FEP Fund I, LP.

IT IS SO ORDERED.

Date:   August 10, 2016

/s/ Indira Talwani
United States District Judge